(30 Misc. Rep. 457.)

### WICK v. KUNZEMAN et al.

(Supreme Court, Appellate Term. February 8, 1900.)

FRAUDULENT CONVEYANCES—PERSONAL PROPERTY—EVIDENCE.

Where a driver, without apparent means, purchased his employer's stock of merchandise at midnight for $1,400, which he claimed to have received from Germany, but failed to call the bankers from whom he said he received it, and his employer was largely indebted, a finding that the sale was merely colorable was warranted.

Appeal from municipal court, borough of Manhattan, First district.

Action by Adam Wick against Jacob Kunzeman and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-TRITT, JJ.

Rudolph Praast, for appellants.

Louis Levy, for respondent.

LEVENTRITT, J. A careful reading of the record satisfies me that the circumstances attending the alleged transfer of the property, the ownership of which is in dispute, were sufficiently suspicious to have warranted the court in holding that the sale was merely colorable. The action was brought on a bond pursuant to which the defendants obligated themselves to pay a specified sum in the event that one Henry Staby failed to establish general ownership in certain property as of the time of its seizure by a city marshal. Staby was in the employ of one Adolph Schaedel, a baker, at 173 First avenue, in this city, in the capacity of driver of a delivery wagon. Schaedel had purchased flour from various concerns, among them the firm of Weeks & Parr, the assignors of the plaintiff. Their last delivery had been made on the 3d day of May, 1899. On that day Schaedel promised the plaintiff, a salesman of Weeks & Parr, that he would on the following Monday, the 8th day of May, make payment for bills due. On the 5th day of May, Schaedel, under an alleged bill of sale, sold his entire business to his driver for the sum of $1,425. The transaction took place at night. Thereupon, and after midnight, Schaedel moved out, and, to quote Staby, "he told me he had rooms uptown, and

was going to come back Monday, and for me to go on in the business." Schaedel returned at 4 o'clock Monday morning, removed some furniture, and, according to Staby, has not been seen since. Staby claimed that he paid the full consideration recited in the bill of sale. He asserted that he had paid it in cash, and when pressed to explain how he, an ordinary workman and driver in the employ of Schaedel, was possessed of so large a sum, maintained that he had received it six or seven months before the sale from his wife's relatives in Germany. He had not placed the money in bank, and, though he named a responsible firm of resident bankers through whom he claimed to have received it, he called no one to corroborate the receipt. He positively denied that he had ever had an interview with one Jacob Berlesco, an employé of Weeks & Parr; yet the latter, after having testified that he had called on Schaedel on Saturday, the 6th day of May, one day after the alleged transfer, and that he also had then been put off to the following Monday, added that on that day he found on the premises only Staby, who, to use the words of the witness, "told me, laughingly: 'He is not here any more; he run away, and moved about four o'clock in the morning. * * * I bought five hundred dollars' worth of stock, and bought it cheap.'" In view of these several conflicts, and taking into consideration that, if Staby's version was true, there was ample corroborative evidence accessible to him, which he failed to present, I am of the opinion that the court, aided by its opportunity of observing the demeanor of the several witnesses, was justified in discrediting the story that, at an unseasonable hour, a driver, without apparent means, had paid a large sum for the business of his employer. The judgment should be affirmed.

Judgment affirmed, with costs to the respondent. All concur.